IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEAH JENKINS, § | | |
| § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | | |
| § | | |
| HARTFORD UNDERWRITERS § | CIVIL ACTION NO. 4:17-cv-1158 |
| INSURANCE COMPANY, THE § | | |
| HARTFORD FINANCIAL SERVICES § | | |
| GROUP D/B/A THE HARTFORD, and § | | |
| CONNIE OWENS, § | | |
| § | | |
| *Defendants*. § | | |

## NOTICE OF REMOVAL

Because (i) there is complete diversity among the parties, (ii) the amount in controversy, according to the Leah Jenkins's "Original Petition & Jury Demand," exceeds $75,000, and (iii) the "forum defendant rule" does not preclude removal since Texas citizen Connie Owens was improperly joined, Hartford Underwriters Insurance Company files this Notice of Removal to the United States District Court for the Southern District of Texas (Houston Division) from the 55th District Court of Harris County, Texas pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

### EXHIBITS

Exhibit A:  Index of matters being filed;

Exhibit B:  A copy of all docket sheets, all process, pleadings, and orders served upon Hartford Underwriters in this action; and

Exhibit C:  A list of all counsel of record, including addresses, telephone numbers and parties represented.

## BACKGROUND

On February 27, 2017, Leah Jenkins, an Arizona citizen, filed the instant lawsuit in the 55th Judicial District Court of Harris County, Texas against (i) Hartford Underwriters Insurance Company ("Hartford Underwriters"), (ii) Connie Owens, who Jenkins alleges is a Hartford Underwriters employee, and (iii) Hartford Financial Services Group ("Hartford Financial"). *See* Plaintiff's "Original Petition & Jury Demand," included with Exhibit B.

Jenkins alleges she injured her back in the course and scope of her employment with Maka Inc., an Arizona company. *Id*. ¶ 5.2; *see also* "Notice of Claim Status" attached to Jenkins's petition. Jenkins alleges she filed a workers' compensation insurance claim with Hartford Underwriters, which issued a workers' compensation insurance policy for the benefit of "the employees of the [sic] Maka Inc." *Id*. Jenkins alleges Owens, Hartford Underwriters' "agent," adjusted her workers' compensation insurance claim "in conjunction with her employment with . . . Hartford Underwriters" and acted "within the scope of her actual authority." *Id*. at ¶¶ 8.2 and 8.3. Jenkins alleges Hartford Underwriters relied on Owens and "issued denials of benefits . . . on March 5, 2015 and June 12, 2015, ending and closing Ms. Jenkins' benefits." *Id.* at ¶ 5.2. Jenkins alleges she secured a ruling from the Industrial Commission of Arizona against Hartford Underwriters on July 25, 2016, reinstating certain benefits. *Id*. at ¶ 5.3. Jenkins alleges "this delays [sic] caused Ms. Jenkins to suffer damages." *Id*. Specifically, Jenkins alleges "delays of payment for his [sic] necessary medical care" resulted in damages "over

$1,000,000.00" that are "separate and distinct from her on-the-job injury" and which "he [sic] is still fighting to recover." *Id.* at ¶¶ 4.2, 5.3, and 5.5.

Against Hartford Underwriters, Jenkins asserts a claim for "breach of the duty of good faith and fair dealing under Arizona law." *Id.* at ¶ 6.3 Specifically, Jenkins alleges Hartford Underwriters breached its duty of good faith and fair dealing by relying on Owens' claims handling decisions and denying or delaying Jenkins' claim. Specifically, Jenkins alleges Hartford Underwriters is liable for:

- "Relying on Ms. Owens' [sic] who it knew or should have known intentionally denied workers' compensation benefits without a reasonable basis for such denial."

- "Relying on Ms. Owens' [sic] who it knew or should have known knowingly terminated workers' compensation benefits without a reasonable basis for such action."

- "Relying on Ms. Owens' [sic] who it knew or should have known failed to perform and adequate and reasonable investigation or evaluation to determine whether any termination of benefits was supported by a reasonable basis."

- "Relying on Ms. Owens' [sic] who unreasonably interpreted Defendants' obligation sunder the Arizona Workers' Compensation Act to arbitrarily and capriciously delay, decrease, and deny benefits owed to Ms. Jenkins."

- "Relying on Ms. Owens' [sic] who abused the litigation process and procedures of the Industrial Commission of Arizona as a tool to delay, decrease, and deny benefits owed to Ms. Jenkins."

- "Relying on Ms. Owens' [sic] who needlessly compelled Ms. Jenkins through administrative litigation to receive benefits under his [sic] workers' compensation insurance policy."

- "Relying on Ms. Owens' [sic] who delayed, decreased, and denied benefits to Ms. Jenkins with the intent to cause him [sic] to accept a compromised amount of the benefits that should have been due and owing under his workers' compensation insurance policy."

- "Failing to adopt and implement reasonable standards for investigating and evaluating benefits due to Ms. Jenkins under his [sic] workers' compensation insurance policy."

- "Placing the financial interests of Defendants above the interests of Ms. Jenkins."

*Id.* at ¶ 6.5 (a-i).

Against Hartford Financial and Owens, Jenkins asserts a claim for "aiding and abetting Hartford Underwriters" under Arizona law. *Id.* at ¶¶ 7.5 and 8.6. With respect to Owens, Jenkins alleges:

- "Lee [sic] is subject to individual liability for her actions . . . in conjunction with her employment with . . . Hartford Underwriters."

- "Ms. Owens' [sic] knew that, after an adequate investigation, Ms. Jenkins' claim was not fairly debatable, that Hartford Underwrites delayed and denied Ms. Jenkins' claim without any reasonable basis, and that Hartford Underwriters knew or recklessly disregarded this lack of a reasonable basis to delay and deny Plaintiff's claim."

- "Ms. Owens thus substantially assisted or encouraged Hartford Underwriters in delaying or denying Ms. Jenkins' on-the-job injury claim, without any reasonable basis."

*Id.* at ¶¶ 8.3-8.5

Jenkins claims that all defendants are liable for punitive and actual damages, including "the consequential damages to his [sic] economic welfare," as well as "any other relief which he [sic] may be entitled." *Id.* at ¶ 10.1.

4

**BASIS OF REMOVAL**

This case is properly removable to federal court because (i) it involves a controversy between citizens of different states, and (ii) an amount in controversy that exceeds $75,000. *See* 28 U.S.C. §§ 1332, 1441, and 1446. With respect to the former, Jenkins is a citizen of the State of Arizona, and Hartford Underwriters and Hartford Financial are incorporated and have their principal places of business in Connecticut. *See* Plaintiff's "Original Petition & Jury Demand," at ¶¶ 3.1-3.3, included with Exhibit B. Owens is a Texas citizen; however, as discussed in the next section, the "forum state defendant rule" does not preclude removal because Owens was improperly-joined. With respect to the latter, according to Jenkins, she is seeking "an amount over $1,000,000." *Id.* at ¶ 4.2.

**THE "FORUM DEFENDANT RULE" DOES NOT PRECLUDE REMOVAL**

*Introduction*

Judging from her petition, it is doubtful Jenkins has ever once stepped foot in the State of Texas. She is an *Arizona* citizen; she worked for an *Arizona* company; she was injured in *Arizona*; she sought and received medical treatment in *Arizona*; she submitted a workers' compensation claim in *Arizona*; the claim was adjusted and paid in *Arizona* in accordance with *Arizona* workers' compensation laws; she retained an *Arizona* attorney to prolong benefits; she filed a claim in the Industrial Commission of *Arizona*; she secured a favorable ruling in *Arizona*; benefits were reinstated in *Arizona*, she claims

delays in payment resulted in more damages in *Arizona*; and she says her causes of action are all governed by *Arizona* law.

With this substantial connection to Arizona, one has to wonder why this Arizona citizen would uproot from her home in Scottsdale and travel nearly 1,180 miles to Harris County, Texas to file her lawsuit. The reason is simple. Jenkins does not want to be in federal court where her "aiding and abetting" theory, as asserted against insurance adjusters, has been rejected under Rule 12(b)(6), *repeatedly*.

Jenkins knows that if she had filed the lawsuit in Arizona, Hartford Underwriters would have had an easy path to federal court based on diversity. Not even joining Owens would have prevented removal. So, Jenkins believes that by traveling to *Owens'* home state and suing her here, she can avail herself of the "forum defendant rule" to avoid federal court altogether. There are, of course, several problems with Jenkins' thinking, including this important one: to carry out her plan, Jenkins must, at a minimum, have a proper claim to assert against Owens; that is, Owens must be a properly-joined party. Because Jenkins' "aiding and abetting" claim against Owens fails as a matter of Arizona law, Owens is not a properly-joined party. Jenkins' cross-country effort to avoid federal court, and important federal court rulings, is futile.

### *The "forum defendant rule" is subject to the improper-joinder standard*

Generally, a defendant in a state court lawsuit has the right to remove a case to federal court on the basis of diversity jurisdiction. 28 U.S.C. § 114; *see also* 28 U.S.C. § 1332. However, "[a] civil action otherwise removable solely on the basis of the

6

jurisdiction under section 1332(a) of this title [*i.e.*, diversity jurisdiction] may not be removed if any of the parties in interest *properly joined* and served as defendants is a citizen of the State in which such action in brought." 28 U.S.C. § 1441(b)(2) (emphasis added). This is referred to as the "forum defendant rule." *See In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 391 (5th Cir. 2009).

Importantly, for the "forum defendant rule" to apply, the in-state defendant must have been "properly joined." As one court recently explained, Congress added the language "properly joined" to section 28 U.S.C. § 1441(b)(2) "to prevent improper joinder and abuse of the forum-defendant rule." *Breitweiser v. Chesapeake Energy Corp.*, No. 3:15-CV-2043-B, 2015 WL 6322625, * 5 (N.D. Tex. Oct. 20, 2015). Therefore, an improperly-joined "forum defendant" cannot defeat removal in diversity cases. As the Fifth Circuit put it, "under the fraudulent joinder doctrine, federal removal jurisdiction premised on diversity cannot be defeated by the presence of an improperly-joined . . . in-state defendant." *Salazar v. Allstate Texas Lloyd's,* 455 F.3d 571, 574 (5th Cir. 2006).

### *The standard for improper joinder*

When a party, such as Owens, has been improperly or collusively joined, district courts are charged with vigilantly protecting the right to proceed in federal court. Improper joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the improperly-joined party. *See Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). "To determine whether an in-state defendant has been improperly joined, the Court usually

7

'conduct[s] a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.'" *Lowery v. Wal-Mart Stores Texas, LLC,* No. 4:17-cv-0166, 2017 WL 999259, *3 (S.D. Tex. March 15, 2017) (Hon. Judge Nancy Atlas). "[A] plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Gines v. D.R. Horton, Inc*., 699 F.3d 812, 816 (5th Cir. 2012)). "'Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### *Jenkins failed to state a claim against Owens*

Jenkins asserted only one alleged cause of action against Owens—a claim under Arizona law for "aiding and abetting" Hartford Underwriters' alleged breach of duty of good faith and fair dealing. However, Arizona does not recognize a claim against insurance adjusters for "aiding and abetting" in this context—where the insurer's alleged liability is premised on its adjuster's claims handling.

In fact, federal courts in Arizona that have analyzed "aiding and abetting" claims against insurance adjusters—presented in complaints that *mirror* Jenkins' petition, and, in fact, were *all* authored by Jenkins' own attorney—have repeatedly dismissed the claim because essential factual allegations were lacking. Opinions abound:

8

- *Young v. Liberty Mutual Group*, No. CV-12-2302-PHX-JAT, 2013 WL 840618 (D. Ariz. March 6, 2013) (dismissing the plaintiff's "aiding and abetting" claim against an insurance adjuster because the breach of the duty of good faith and fair dealing claim against the insurer was, unavoidably, based on the adjuster's conduct);

- *Brown v. Travelers Prop. Cas. Co. of Am.,* No 2:13-cv-01542-DJH, Doc No. 58 (D. Ariz. July 30, 2013) (same).

- *Jones v. Colorado Cas. Ins. Co.*, No. CV 12-1968-PHT-JAT, 2013 WL 4759260 (D. Ariz. Sept. 4, 2013 (same);

- *Lambert v. Liberty Mut. Fire Ins*. Co., No. 2:14-cv-00521-JWS, Doc. No. 45 (D. Ariz. March 13, 2014) (same);

- *Sayers v. Safety Nat. Cas. Corp.*, No 2:14-cv-00532-SRB, Doc. No. 24 (D. Ariz. March 14, 2014) (same);

- *Ortiz v. Zurich Am. Ins. Co.,* No. CV-13-02097, 2014 WL 1410433 (D. Ariz. April 11, 2014) (same);

- *Nieto v. New Hampshire Ins. Co*., No 2:14-cv-01092-SRB, Doc. No. 34 (D. Ariz. May 21, 2014) (same);

- *Meredith v. New Hampshire Ins. Co*., No. CV-13-02013-PHX-DLR, 2015 WL 12661941 (D. Ariz. April 7, 2015) (same);

- *DeMott v. LM Ins. Corp*., No 2:14-cv-01917-SPL Doc. No. 39 (D. Ariz. April 29, 2015) (same).

- *Ragaller v. Ace Am. Ins. Co*., No 4:15-cv-00327-DCB, Doc. No. 15 (D. Ariz Oct. 27, 2015) (same).

- *Roman v. Berkshire Hathaway Homestate Ins. Co*., No 2:15-cv-02447-NVW, Doc. No. 17 (D. Ariz. Jan. 27, 2016) (same).

- *Lemaster v. Hartford Ins. Co. of the Midwest*, No. CV-13-02017-PHX-JJT, 2016 WL 705125 (D. Ariz. Feb. 23, 2016) (same).

- *Rosso v. Liberty Ins. Corp*., No. CV-16-00860-PHX-DLR, 2016 WL 4013614 (D. Ariz. July 27, 2016) (same).

These opinions, as well as the complaints they addressed, are included in the contemporaneously-filed appendix. It is no wonder Jenkins avoided filing suit in Arizona. But in reality, coming to Texas does not change the outcome. Despite Jenkins' forum shopping, this Court should hold, as federal courts in Arizona have repeatedly held in the identical context, that Owens is not a proper party.

As discussed further below, Jenkins has no possibility of recovering for "aiding and abetting" because (1) Hartford Underwriters and Owens acted as one entity making it a legal impossibility for an entity to aid and abet itself, and (2) Jenkins' petition is devoid of any allegations that Owens substantially assisted or encouraged the primary tortfeasor in the achievement of the alleged breach.

**A.     Introduction**

To better understand why courts repeatedly reject "aiding and abetting" claims against insurance adjusters, it is helpful to review what duties are owed by insurance adjusters in Arizona.

Under Arizona law, duties between the insured and the insurer arise from the contractual relationship; consequently, the insurance adjuster, who lacks the requisite contractual relationship with the insured, does not owe common law duties to the insured. *See Jacobs v. Am. Family Mut. Ins. Co.*, No. CV-13-01404-PHX-SRB, 2013 WL 11785112, at *2 (D. Ariz. Aug. 29, 2013); *see also Meineke v. GAB Bus. Servs., Inc.*, 195 Ariz. 564, 567, 991 P.2d 267, 270 (Ct. App. 1999) ("the relationship between adjuster and insured is sufficiently attenuated by the insurer's control over the adjuster to be an

important factor that militates against imposing a further duty on the adjuster to the insured"). As Arizona law makes clear, "[c]reating a separate duty from the adjuster to the insured would thrust the adjuster into what could be an irreconcilable conflict between such duty and the adjuster's contractual duty to follow the instructions of its client, the insurer." *Id.* at 271. Consequently, an insurance adjuster does not owe an insured the duty of good faith and fair dealing. *Jacobs*, 2013 WL 11785112, at *2.

Against this backdrop, it is no wonder that Arizona courts regularly reject plaintiffs' attempts to join in-state insurance adjusters to defeat diversity. In *Didyoung v. Allstate Insurance Company,* for example, the sham defendant was dismissed after the court found not even a "glimmer of hope" that an Arizona court would find an adjuster liable for negligent claim handling. No. CV-12-348-PHX-GMS, 2012 WL 1983779, at *5 (D. Ariz. June 4, 2012); *see also Huffman v. Am. Family Mut. Ins. Co.*, No. CV 10-2809-PHX-FJM, 2011 WL 814957, at *3 (D. Ariz. Mar. 4, 2011) (finding there are no cases upholding a bad faith claim against an insurance adjuster and that the duty of good faith and fair dealing arises from contract, therefore denying plaintiff's request to amend pleadings to assert claim against adjuster that would defeat diversity).

Recognizing the inevitable failure of any claim based upon the existence of a duty, Jenkins says she is not attempting to hold Owens liable for her own alleged breach, but rather for "aiding and abetting" Hartford Underwriters breach its duty of good faith and fair dealing. However, because Jenkins' claim against Hartford Underwriters is premised

11

on Owens' conduct as Hartford Underwriters' "agent," her "aiding and abetting" claim fails as a matter of law.

**B.     Jenkins cannot state a claim for "aiding and abetting" against Owens.**

Arizona generally recognizes, in some contexts, "aiding and abetting" as set forth in the Restatement (Second) of Torts, § 876(b) (1977). *See Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,* 38 P.3d 12, 23 (2002). A claim for "aiding and abetting" requires proof that:

1. The primary tortfeasor committed a tort that caused injury to the plaintiff;

2. The alleged "aider and abettor" knew that the primary tortfeasor's conduct constituted a breach of duty; and

3. The alleged "aider and abettor" substantially assisted or encouraged the primary tortfeasor in the achievement of the breach.

*Id.* at 34 (citing Restatement (Second) of Torts § 876(b)).

Thus, to state a claim for "aiding and abetting," a plaintiff must plead facts showing: (1) a primary tortfeasor who committed a primary tort, and (2) a secondary tortfeasor who committed a secondary act that substantially assisted the primary tortfeasor with the accomplishment of the primary tort. *Young v. Liberty Mut. Grp., Inc.*, No. CV-12-2302-PHX-JAT, 2013 WL 840618, at *3 (D. Ariz. March 6, 2013). It is insufficient for a plaintiff to merely allege commission of a single tort between the two actors. Rather, a second act is required to "aid and abet" the primary act. *Young v. Liberty Mut. Grp., Inc.*, No. CV-12-2302-PHX-JAT, 2013 WL 840618, at *3 (D. Ariz. March 6, 2013).

Importantly, when an employee acts as the agent of his or her employer and the employee's conduct is the basis for the employer's alleged liability, the employee is not liable for "aiding and abetting" since there is but one actor and one tort. *See Jones v. Colorado Cas. Ins. Co.*, No. CV 12-1968-PHX-JAT, 2013 WL 4759260, at *4 (D. Ariz. Sept. 4, 2013) (recognizing in the insurance context that if the insurer could not have committed the breach without the employee adjuster's actions, the employee committed the primary tort acting as a single entity of the carrier); *see also Ortiz v. Zurich Am. Ins. Co.,* No. CV-13-02097-PHX-JAT, 2014 WL 1410433, at *3 (D. Ariz. Apr. 11, 2014) (single actor cannot assist or encourage her own acts).[1] That is the case here.

Jenkins' "aiding and abetting" claim against Owens fails because she alleges no facts to show that Hartford Underwriters, as the primary actor, committed a tort that Owens, as the secondary actor, "aided and abetted" through separate conduct that she knew would assist Hartford Underwriters achieve the breach. Rather, her petition makes it clear that Hartford Underwriters' alleged liability for breach of the duty of good faith and fair dealing is premised on Owens' conduct in adjusting the claim as Hartford Underwriters' "agent."[2]

To be sure, throughout her petition, Jenkins alleges that Owens adjusted Jenkins' insurance claim "as an agent for Hartford Underwriters"; that she acted within "her actual

---

[1]  Unreasonable inferences unsupported by factual allegations will not support a claim for aiding and abetting. *See Dawson v. Withycombe,* 164 P.3d 1034, 1053 (App. 2007).

[2]  Under Arizona law, an insurer's duty of good faith and fair dealing is implied in every contract for insurance. *See Walter v. Simmons,* 818 P.2d 214, 221 (App. 1991). That duty is non-delegable. *Id.* at 223. However, the insurer may delegate "*performance* of its duty." *Id.* (emphasis in original).

authority"; and that her conduct in adjusting the claim was "in conjunction with her employment with . . . Hartford Underwriters." According to Jenkins, Owens mishandled the claim, as Hartford Underwriters' "agent" and "employee," by failing to properly investigate and by delaying or denying payment of benefits. Jenkins says Owens' conduct establishes Hartford Underwriters' alleged breach of the duty of good faith and fair dealing. According to Jenkins, "Hartford Underwriters breached this duty by relying on Ms. Owens' unreasonable investigation and improper delays of payments for necessary medical care or other benefits, without a reasonable basis to do so." Because Hartford Underwriters' purported liability is based on Owens' conduct in adjusting the claim as Hartford Underwriters' "agent," there is only one tortfeasor, creating a legal impossibility of recovering under a claim for "aiding and abetting."

Underscoring this point, Jenkins' does not allege *any* facts supporting an "aiding and abetting" claim against Owens that is based on actions separate and distinct from the acts upon which she seeks to hold Hartford Underwriters responsible for the alleged breach of the duty of good faith and fair dealing. As a corporation, Hartford Underwriters acts through its employees, so a separate "aiding and abetting" claim cannot lie. Indeed, "aiding and abetting" requires two separate tortious acts—the first by the primary tortfeasor and the second by the party who assists or encourages the primary tortfeasor commit the tortious act. Thus, for Owens to "aid and abet" Hartford Underwriters' alleged breach of the duty of good faith and fair dealing, there must be some factual allegations showing Owens committed a separate act in concert with the action giving

rise to Jenkins' claim against Hartford Underwriters. However, Jenkins has not and cannot make this claim. She alleges only that Hartford Underwriters wrongfully denied or delayed payment—conduct she attributes to Owens who acted as Hartford Underwriters' "agent." Thus, even if Hartford Underwriters breached a duty, which is denied, Owens cannot be held liable for such a breach under an "aiding and abetting" theory when her alleged liability stems solely from her conduct in adjusting the claim for Hartford Underwriters.[3]

Jenkins "adding and abetting" claim also fails because she has not and cannot show that Owens knew that Hartford Underwriters' conduct constituted a breach of duty or that Owns engaged in any conduct that substantially assisted or encouraged Hartford Underwriters in the achievement of the breach. Again, Jenkins claims that it is Owens' conduct in adjusting the claim that exposes Hartford Underwriters to liability. Owens could not have known that Hartford Underwriters' conduct in "relying" on her claims

---

[3]  Jenkins' use of the word "Defendants" throughout her petition further demonstrates her inability to differentiate among Owens and Hartford Underwriters. Jenkins alleges:

- "*Defendants* . . . have engaged in conduct that wrongfully denied and/or unreasonably delayed payment of workers' compensation benefits."

- "*Defendants* chose to continue to deny timely approval and payment of the medical care and insurance benefits."

- "*Defendants* issued denials of benefits."

- "*Defendants'* wrongful conduct" including: failure to conduct a reasonable investigation, failure to timely recognize and acknowledge injury, failure to accept undisputed evidence, denial of injury without the input of competent individuals, using pre-textual reasons for denial, ignoring and refusing to consider favorable information and not using the industry's best practices."

adjusting constituted a breach of duty. The "reliance" necessarily came after Owens' acted and Owens cannot know about conduct that did not yet exist.

Not surprisingly, Arizona law is replete with cases rejecting "aiding and abetting" claims that are identical to Jenkins'. In the cases set forth on page 9, the plaintiff sued their insurers for breach of the duty of good faith and fair dealing by allegedly conducting an improper investigation and delaying and/or denying the payment of benefits. Like Jenkins, the plaintiffs also asserted that the insurers' adjusters "aided and abetted" the insurers' breach. Recognizing that the claims against the insurers are premised on the adjusters' conduct, the courts dismissed the plaintiffs' "aiding and abetting" claim, finding the adjuster was improperly joined. *See Young Group*, 2013 WL 840618; *Ortiz*, 2014 WL 1410433; *Lemaster,* 2016 WL 705125; *Rosso,* 2016 WL 4013614; *Meredith*, 2015 WL 12661941; see also *Brown v. Travelers Prop. Cas. Co. of Am.,* No 2:13-cv-01542-DJH, Doc No. 58 (D. Ariz. July 30, 2013); *Jones v. Colorado Cas. Ins. Co.*, No. CV 12-1968-PHT-JAT, 2013 WL 4759260 (D. Ariz. Sept. 4, 2013); *Lambert v. Liberty Mut. Fire Ins*. Co., No. 2:14-cv-00521-JWS, Doc. No. 45 (D. Ariz. March 13, 2014); *Sayers v. Safety Nat. Cas. Corp*., No 2:14-cv-00532-SRB, Doc. No. 24 (D. Ariz. March 14, 2014); *Nieto v. New Hampshire Ins. Co*., No 2:14-cv-01092-SRB, Doc. No. 34 (D. Ariz. May 21, 2014); *DeMott v. LM Ins. Corp*., No 2:14-cv-01917-SPL Doc. No. 39 (D. Ariz. April 29, 2015); *Ragaller v. Ace Am. Ins. Co*., No 4:15-cv-00327-DCB, Doc. No. 15 (D. Ariz Oct. 27, 2015); *Roman v. Berkshire Hathaway Homestate Ins. Co*., No 2:15-cv-02447-NVW, Doc. No. 17 (D. Ariz. Jan. 27, 2016) (same).

As noted, these dismissal opinions and the "aiding and abetting" complaints they addressed are included in Hartford Underwriter's appendix. The similarities of the complaints to Jenkins' petition here, *down to the author*, are striking. This Court should find that Owns is an improper party, dismiss her from the lawsuit, and retain diversity jurisdiction.

## Conclusion

Under 28 U.S.C. § 1441(a), venue of the removed action is proper in this Court as a district or division embracing the place where the state action is pending. The time within which Hartford Underwriters is required to file this Notice of Removal in order to remove this cause to the Court has not yet expired.

As the removing party, Hartford Underwriters will properly give the adverse party written notice of the filing of removal as required by 28 U.S.C. § 1446(b). Additionally, Hartford Underwriters will promptly file a copy of this Notice of Removal with the Clerk of the 55th Judicial District Court, where the action is currently pending, pursuant to 28 U.S.C. § 1446(d).

Pursuant to 28 U.S.C. § 1446, Hartford Underwriters removes the case styled *Leah Jenkins v. Hartford Underwriters Insurance Company; The Hartford Financial Services Group d/b/a The Hartford; and Connie Owens,* Cause No. 2017-13530; 55th Judicial District Court of Harris County, Texas to the United States District Court for the Southern District of Texas, Houston Division, on this 13th day of April, 2017.

17

        Respectfully submitted,

        CHAMBERLAIN, HRDLICKA, WHITE,
         WILLIAMS & AUGHTRY

        By: */s/ Steven J. Knight*
         STEVEN J. KNIGHT
         State Bar No. 24012975
         steven.knight@chamberlainlaw.com
         1200 Smith Street, Suite 1400
         Houston, Texas  77002
         (713) 658-1818

Of Counsel:

CHAMBERLAIN, HRDLICKA, WHITE,
 WILLIAMS & AUGHTRY

Michelle L. Sloan
Texas Bar No. 24093037
michelle.sloan@chamberlainlaw.com
1200 Smith Street, Suite 1400
Houston, Texas  77002
(713) 658-1818

COUNSEL FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

   A copy of the foregoing has been served on all attorneys of record by the Court's electronic filing system, first class U.S. Mail, facsimile, email, and/or certified mail return receipt requested, on April 13, 2017.

   Michael Patrick Doyle
   Patrick M. Dennis
   Jeffrey Avery
   DOYLE LLP
   3401 Allen Pkwy
   Houston, Texas 77019
   service@doylelawfirm.com

         */s/ Steven J. Knight*
        Steven J. Knight

18